[No. 31685.   Department Two.   August 2, 1951.]

EULENE GARRETT, as *Administratrix, Appellant,* v. HARRY
LINDEN *et al., Respondents.*[1]

*E. J. Stanfill* and *S. Dean Arnold,* for appellant.

*Minnick & Hahner* and *Lowell B. Vail,* for respondents.

PER CURIAM.—This action was instituted by appellant as administratrix of the estate of her deceased husband to recover damages resulting from his death. The case was tried before the court without a jury. The court made findings of fact, and entered a judgment dismissing the action.

Our perusal of the statement of facts leads us to the conclusion that the material findings of fact made by the court are supported by a preponderance of the evidence and disclose the following situation:

The respondents operated a stock ranch in Garfield county. In September, 1948, decedent was employed by respondents to perform general ranch work, which included the tending of cattle, much of which was done on horseback. The decedent was an experienced horseman. The respondents assigned a saddle mare to decedent for his use in the performance of his cattle-tending duties, and he rode her intermittently from the time of his employment until February 22, 1949, the date he met his death. During this time

[1] Reported in 234 P. (2d) 477.

the mare was with foal, which fact was known to decedent. The mare foaled on or about the first day of May, 1949.

On February 22, 1949, the decedent and another employee had duties to perform which necessitated crossing Meadow Creek. Owing to the melting of snow, the water in the creek was much higher than normal. The decedent had ridden the mare across the creek several times when the water was high prior to February 22nd. No difficulty was encountered when the decedent and his companion made their first crossing. On their return, the decedent was preceded by his companion. The mare he was riding lost her footing. The decedent fell into the water and was drowned. No one having any testimonial knowledge was able to state what caused the mare to lose her footing. The next day, when the water had fallen to some extent, observers noticed that the flood waters had cut the bank of the creek at the place of crossing so that there was a vertical offset of about one and one-half feet. Whether such was the condition the day before does not appear. Several theories were advanced by witnesses as to probable causes, but nothing sufficiently tangible was presented from which even an inference can be drawn as to how the accident happened.

The claim of negligence on the part of respondents was that they furnished decedent with a mare unsafe to ride, in that the advanced stage of her pregnancy was such that she had become clumsy, not reasonably sure-footed, more susceptible to stumbling, and particularly, if she did stumble, had less ability to recover her footing, thus creating a hazard to the rider. Witnesses claiming to be conversant with the use of pregnant mares gave the court conflicting opinions as to their safety for use as the one ridden by decedent was being used just prior to and when the fatal accident occurred. The trial judge considered the physical facts, the testimony of the witnesses, and matters of common knowledge to all who have had experience with the use of mares while with foal, and reached the conclusion that the animal furnished decedent to ride was not unsafe for such purpose.

A reading of the record causes us to arrive at the same conclusion. The respondents breached no duty owing to decedent.

The judgment is affirmed.